UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

**WILLIAM EDEN**                                              DOCKET NO. 3:15-cv-00381

V.                                                            JUDGE _____

**HANCOCK HOLDING COMPANY AND**          MAGISTRATE JUDGE
**ITS' SUBSIDIARIES, WHITNEY BANK,**     _____
**& HANCOCK**
**INVESTMENT SERVICES**

## COMPLAINT FOR DAMAGES AND REQUEST FOR INJUNCTIVE RELIEF AND/OR EQUITABLE RELIEF

The Complaint of William Eden, a resident of the full age of majority of East Baton Rouge Parish, Louisiana, respectfully represents:

1.

Jurisdiction is founded herein pursuant to 28 U.S.C. §1331 (federal question), 28 U.S.C. § 1332 (diversity jurisdiction), and 28 U.S.C. §1367 affording supplemental jurisdiction over Petitioner's claims arising under State law. Venue is proper within this judicial district as the acts alleged herein occurred within the Middle District.

2.

Made Defendants herein are:

1. Hancock Holding Company, the parent company of Whitney Bank, a corporate entity domiciled in Gulfport, Mississippi and conducting business in East Baton Rouge Parish, Louisiana;

2. Whitney Bank, a corporate entity and subsidiary of Hancock Holding Company, domiciled in New Orleans, Louisiana, and actually doing business in East Baton Rouge Parish, Louisiana; and

3.  Hancock Investment Services, a subsidiary of Hancock Holding Company, domiciled in Gulfport, Mississippi and conducting business in East Baton Rouge Parish, Louisiana.

which are justly and truly indebted unto Petitioner for all sums as are reasonable under the premises, attorney's fees, all costs of these proceedings, legal interest thereon from the date of demand until paid, and all such other relief to which Petitioner is entitled at law or in equity

3.

Petitioner is a highly experienced securities industry professional with seventeen years experience involving various roles in the securities industry. Prior to accepting employment with Defendants, Petitioner served as a compliance examiner in the New Orleans office of FINRA. Petitioner holds the General Securities (Series 7), General Principal (Series 24), and Investment Adviser (Series 66) registrations.

4.

On October 10, 2010, defendant, Hancock Holding Company, hired Petitioner to serve as Chief Compliance Officer (CCO) for its broker/dealer firm, Hancock Investment Services.

5.

After his hire, Petitioner was tasked with serving as CCO for Horizon Advisers, a separately identifiable department of the Bank that serves as the Adviser to the Hancock Horizon mutual fund family.  Petitioner was never compensated for this additional role.

6.

Three serious issues emerged during Petitioner's employment with Defendants: 1) longstanding and ongoing securities violations; 2) significant resource allocation deficiencies in the Compliance Department; and 3) dysfunctional management within HIS.

7.

Upon assuming the role of Chief Compliance Officer for Hancock Investment Services, Petitioner discovered the firm's profit margin was twice that of similar bank broker/dealers. Maintaining high profitability was the primary focus of the firm's executives rather than compliance functions. As Hancock Investment Services President, Randy Bluth's compensation was heavily dependent on sales incentives and Bluth's supervisor, Clifton Saik, the CEO of Wealth, exerted enormous pressure on Bluth to maintain Hancock's large profit margin.

8.

HIS also lacked management and board infrastructure that impacted Petitioner's ability to report issues involving compliance functions and regulatory violations. Hancock Investment Services' board did not hold formal meetings, keep meeting minutes, or have committees devoted to risk or compliance. Clif Saik, the President of Wealth, and Randy Bluth, the President of Hancock Investment Services, served as members of the five-member board, therefore there existed no neutral, independent body within HIS that Petitioner could contact regarding regulatory issues. Until 2012, Petitioner had no alternative but to report to Randy Bluth, as there existed no other individual or entity providing oversight to the Broker/Dealer firm. Failing to provide management and board infrastructure, with a view to preventing violations of the Securities Act of 1934, is a violation of 15 U.S.C.S. § 78o(E) and FINRA Rule 3110, which mandates supervision policies that prevent conflicts of interest and ensure regulatory compliance.

9.

Petitioner identified several rule violations that required immediate action in 2010. He discovered that HIS failed to receive permission from FINRA to operate as a Registered Investment Adviser, per the requirements of its FINRA Membership Agreement. Registered

Investment Adviser customers were overcharged more than $50,000, from 2007 until 2011, requiring refunds to affected customers. Starting in 2006 and continuing until Petitioner ended this practice in 2010, HIS allowed sales managers to review the Broker/Dealer's registered branches to which they were assigned, a practice banned by FINRA Rule 3010 in 2006. Finally, when Hancock Holding Company purchased People's First Community Bank in Florida, HIS began operating securities businesses at all of its branches. This expansion required regulatory approval that was never sought or received and constituted a violation of 15 U.S.C.S. § 78(o)E. The securities were operating over and above the limits outlined in the broker/dealer membership agreement with FINRA, a violation of FINRA Rule 1017. To remedy these violations, Petitioner deregistered some of these branches and discontinued the securities businesses operating therein.

10.

In May 2011, Petitioner asked Bluth about a salary increase promised to Petitioner prior to hire and a bonus due to him in 2011. Bluth failed to provide the previously agreed upon salary increase and bonus. Bluth told Petitioner that he needed to understand how corporate America worked. "These things took time" and Petitioner needed to be patient. Petitioner never received the salary adjustment, creating a dramatic pay disparity between Petitioner and comparable CCO's at bank broker/dealers, or the 2011 bonus.

11.

Over the course of his employment, Petitioner uncovered many more violations of securities laws and experienced persistent resource allocation issues affecting the staffing and funding of the Compliance Department. The unlawful conduct included misstatements on the Annual Review submitted to the Board in 2014; Sales Managers failing to perform supervisory functions; unregistered senior management personnel performing supervisory activities that only

registered representatives or registered investment adviser representatives were authorized to perform; and serious resource deficiencies in the Compliance Department that hindered its ability to properly perform compliance functions in accordance with SEC laws and FINRA regulations.

12.

In a meeting with HIS senior staff in May 2011, Petitioner informed them that he required at least five staff members following the merger of Hancock Investment Services with Whitney Securities and Investments. He eventually received four staff members, but two were part time employees shared with another department. The minimal number of Compliance staff constituted a risk to effective compliance performance and violated the supervisory mandates of FINRA Rules 3110 and 3010 and 15 U.S.C.S. § 78o.

13.

In May 2012, Mr. Eden reiterated his concerns regarding staffing and funding issues affecting the Compliance Department at HIS to Randy Bluth. This meeting preceded a scheduled meeting with Clif Saik about Horizon Advisors, another component of Whitney Bank, and for which Mr. Eden served as CCO. Mr. Eden informed Bluth that he wanted to discuss the problems and issues present in HIS's Broker/Dealer with Saik. Bluth flew into a rage and instructed Mr. Eden to never discuss Hancock Investment Services with Saik, Bluth's supervisor. Bluth emphasized that only he would decide what was and was not discussed with Saik. Preventing Petitioner from communicating this information is a violation of Section 15A(b)(6) of the Securities Exchange Act of 1934 and FINRA Rule 2010, both of which mandates ethical conduct within broker/dealers.

14.

In the spring of 2012, Mr. Eden reported his lack of access to Saik to Cindy Collins, the

newly hired CCO for the Bank. In meetings from June 2012 to August 2012, Petitioner met with her numerous times to express his opposition to Bluth's denial of access to Saik and explain the necessity for direct access to Saik in order to report Compliance issues. Although Ms. Collins appeared concerned, no action was taken to remediate this situation until 2014.

15.

Compliance funding and staffing were a persistent problem within HIS. A resource allocation survey conducted in 2012 revealed that HIS would have had to triple the amount of funds dedicated to the Compliance department in order to attain parity with comparable institutions and a 2014 consultation report prepared by the Broker/Dealer's clearing entity, National Financial, noted that HIS Compliance staffing was half that of the average introducing firm for which National Financial conducted a clearing business.

16.

In 2013, Petitioner began sending formal memos to Bluth and Collins detailing the regulatory concerns regarding insufficient Compliance resources that Petitioner had consistently reported and protested since 2011. He sent memos on September 24, 2013 and November 13, 2013, explaining the varied and serious consequences of continued understaffing and underfunding of the Compliance Department. Bluth wrote a response to these memos that downplayed and mischaracterized the issues Petitioner identified. No action was taken to address these concerns. Failing to properly fund and staff the Compliance Department is a violation of 15 U.S.C.S. § 78o(E).

17.

During the firm's routine regulatory exam conducted by FINRA in March 2013, a FINRA supervisor expressed concern about Compliance employees acting as Supervisors.

Petitioner had protested this practice in numerous meetings with Bluth prior to the exam because Sales Managers, registered as General Principals, typically perform supervisory duties. The FINRA supervisor informed Petitioner that he was not comfortable with this situation because HIS sales managers, who perform very few functions that require registration with FINRA as General Principals, could be deemed to be "parking" their registrations at the firm. This constitutes a violation of FINRA registration Rule 1021, which requires all individuals for whom the firm is holding a registration to have a business reason for doing so.

18.

Whitney Bank undertook a major reorganization of the Bank's Wealth Division in May 2013. The reorganization entailed transferring a large portion of insurance sales from Hancock Insurance Agency to Hancock Investment Services. This reorganization was completed without informing Mr. Eden, the CCO of Hancock Investment Services, and without obtaining prior approval from FINRA. FINRA was only consulted after the transfer was complete. Mr. Eden learned of the reorganization after the fact through an email sent to a subordinate from the Director of Retail Sales, who issued instructions to the Compliance employee without having supervisory authority to do so. Excluding Petitioner, as the firm's CCO, from the reorganization process was a violation of FINRA Rules 3110 and 3010 and Section 15A(b)(6) of the Securities Act of 1934, as Petitioner was unable to timely implement an adequate supervisory system, and further ostracized and isolated Petitioner within the firm. The exclusion of Mr. Eden from this important reorganization served to ostracize and isolate Petitioner within the firm.

19.

On August 25, 2014, Mr. Eden met with Bluth to inform him of a resource allocation memo Petitioner had prepared that would, among other things, request additional staff for

Compliance. In the course of this meeting, Bluth exploded in rage and said, ""Do you realize people in the bank call you Kill Bill? You know why? Because people in the bank want to kill you for everything you've done." Bluth told Petitioner that nothing would change. Bluth would be told to respond with another memo, and they would all move on. Bluth then told Petitioner to take three days before sending the memo and consider his future.

20.

Defying this explicit and violent retaliatory threat, Petitioner forwarded the memo to Bluth and Collins on August 27, 2014, and reported the meeting to Human Resources. Petitioner then began parking his vehicle near the secure and highly monitored garages of the United States Secret Service located in the parking lot of his work location.

21.

After reporting this threat to Human Resources, Human Resources engaged Internal Audit to perform the Compliance related reviews associated with Petitioner's complaint. Whitney Bank Chief Internal Auditor, Mike Otero, instructed Petitioner to complete a risk assessment of the Broker/Dealer to evaluate the Compliance concerns identified by him. The review, completed in October 2014, recommended an increase in resource allocation to Compliance including both financial resources and additional staff. Those recommendations were never implemented. Petitioner's Human Resources complaints were denied.

22.

As CCO, Petitioner was responsible for preparing the end of year Broker/Dealer and Investment Adviser Annual Review. This report, required by the firm's policies and procedures, is submitted to the firm's Board and several Bank committees. Petitioner made disclosures in the December 2014 report concerning the ongoing underfunding of Compliance, which was

inhibiting the department's ability to perform its regulatory functions and a rule violation. A misstatement in Hancock Investment Services' accounts receivable totaling approximately $800,000 was not detected in the firm's annual financial audits for ten years. This oversight left the firm's books and records in violation of SEC Books and Records Rule, 15 U.S.C.S. § 17a-3 and FINRA Rule 4511.

23.

After submitting the Annual Review to Bluth for his review on December 29, 2014, Bluth insisted that Petitioner remove information concerning resource allocation and the books and records violation thereby denying the Bank's various boards and committees access to this information. Bluth justified these omissions by telling Petitioner the accounts receivable mistake had been vetted by a financial auditor therefore it wasn't necessary to include it in the Annual Review and resource allocation to compliance was not suitable for board review because Bluth had addressed these issues in meetings with Petitioner. Bluth then drafted his own draft reviews that omitted this information and instructed Petitioner to choose one for Bluth to sign. Based on Bluth's representations, Petitioner prepared an Annual Review report for the Board omitting these items. Thereafter, Petitioner learned that Bluth's statement concerning the accounts receivable mistake was false and the resource allocation issues remained unaddressed. Bluth's actions in interfering with the Annual Review process and inducing Petitioner to falsely amend the Annual Review, violated FINRA Rule 3120 pertaining to testing and Section 15A(b)(6) of the Securities Exchange Act of 1934 and FINRA Rule 2010, both of which mandate ethical conduct within broker/dealers. It was also a violation of FINRA Rules 3110 and 3010, as it caused a failure in the implementation of the firm's supervisory system.  As Hancock Investment Services is a dual broker/dealer and Investment Adviser registered with the SEC, the action to

prevent the making and keeping of accurate records is a violation of Section 204(a) of the Investment Advisers Act of 1940 and Section 3(a)(37) of the Securities Exchange Act of 1934, which mandate accurate books and records for such entities, as well as Section 206(4)-7 of the Investment Advisers Act of 1940, which requires the making and keeping of the Annual Review of the Investment Adviser. As Bluth is not a registered Investment Adviser, his actions regarding the Annual Review is a violation of La. R.S. 51:703(D)(2) and considered an unlawful practice under La. R.S. 51:712.

24.

On January 5, 2015, Petitioner sent yet another resource allocation memo addressed to Bluth. Bluth ignored this memo and continued ostracizing Petitioner by telling a senior officer of the Broker/Dealer's staff that Petitioner was "throwing him under the bus" after a branch audit conducted by Petitioner found that some of the senior officer's staff were late in completing their job duties. Denying resources to the Compliance Department thereby preventing staff from performing their mandated duties is a violation of Section 15A(b)(6) of the Securities Exchange Act of 1934, and FINRA Rule 2010, both of which mandate ethical conduct within broker/dealers. It is also a violation of 15 U.S.C.S. § 78o(E), which mandates a supervisory system designed to prevent violations of the Securities Act of 1934.

25.

Petitioner was finally afforded the opportunity to present Compliance issues directly to Clifton Saik after the Bank's Internal Auditor expressed concerns that Bluth was not fully disclosing firm issues to Saik and mandated Petitioner attend their monthly meetings. During the January 2015 meeting between Bluth, Saik, and Petitioner, Saik informed Petitioner that Internal Audit was to perform an audit of the brokerage firm, at Saik's request, with a special focus on

Compliance. The firm closed out an internal audit in November 2014 and Internal Audit had previously told Petitioner that no audit was scheduled for 2015. This was a retaliatory measure taken as a result of Petitioner engaging in the protected activities of reporting and protesting serious regulatory and compliance issues within the Broker/Dealer. Saik's attempts to manipulate the audit process and intimidate or otherwise prevent Petitioner from implementing an adequate system to detect and prevent violations of industry rules is a violation of 15 U.S.C.S. § 78o(a)(1), prohibiting unregistered employees from performing supervisory functions, of Section 15A(b)(6) of the Securities Exchange Act of 1934 and FINRA Rule 2010, both of which mandate ethical conduct within broker/dealers. It is also a violation of FINRA Rules 3110 and 3010, which mandate an adequate supervisory system and La. R.S. 51:703(D)(2) and La. R.S. 51:712, which prohibit unregistered executives from performing supervisory functions.

26.

In March 2015, Petitioner rejected a piece of advertising containing a promotion the firm had offered in the past but had discontinued due to complaints and lack of a realistic implementation procedure. Bluth, without Petitioner's knowledge, overruled his decision and instructed the firm's Director of Retail Sales to inform the Advertising Department that the promotion was still being offered. This action further alienated Mr. Eden from firm employees and Bluth's manipulation of the review process directly impeded Petitioner's ability to implement an adequate system to detect and prevent violations of industry rules. Bluth's action violated of Section 15A(b)(6) of the Securities Exchange Act of 1934 and FINRA Rule 2010, both of which mandate ethical conduct within broker/dealers and FINRA Rules 3110 and 3010, which mandate an adequate supervisory system. Furthermore, as Hancock Investment Services is a dual broker/dealer and investment adviser registered with the SEC, the action to prevent the

11

making and keeping of accurate records is a violation of Section 204(a) of the Investment Advisers Act of 1940 and Section 3(a)(37) of the Securities Exchange Act of 1940, which mandate accurate books and records for such entities, as well as Section 206(4)-1 of the Investment Advisers Act of 1940 and 15 U.S.C.S. § 80(b), which prohibits false or misleading information within Advertising. Since Bluth is not a registered Investment Adviser representative, his action violated 15 U.S.C.S. § 78o(a)(1), La. R.S. 51:703(D)(2) and La. R.S. 51:712(2).

27.

Throughout the winter and spring of 2015, Petitioner met with the Bank's Chief Compliance Officer, Collins, on multiple occasions regarding the misconduct occurring within Hancock Investment Services. One such meeting included a securities industry consultant who reinforced the Petitioner's concerns. Issues discussed included the ongoing lack of funding for Compliance, the improper influence of Bluth in the preparation of the 2014 Annual Review, and the involvement of Saik and Bluth in broker/dealer operations, as Saik is not a registered employee in the securities industry and Bluth has no Investment Adviser registration. The mandated meetings between Petitioner, Saik, and Bluth led Petitioner to conclude Saik was acting in a supervisory capacity for the broker/dealer without a securities registration. Since Bluth lacked an Investment Adviser registration, decision-making authority regarding Investment Adviser operations was delegated to Petitioner along with a handful of other properly registered individuals within Hancock Investment Services. Yet, nothing was done to address these issues by Collins or anyone else within Hancock Holding Company. On three separate occasions during this time period Petitioner informed Collins that if these issues weren't addressed he would be forced to report them to the SEC and FINRA.

28.

When no action was forthcoming as a result of his efforts to have the issues he had been complaining of, protesting, and opposing for four years, Petitioner reported these violations to the Securities Exchange Commission on March 2, 2015, during a conference call with senior SEC staff from the Commission's Miami office. He then provided documentation to the Commission on April 14, 2015, that was submitted to the Commission through its secure email portal.

29.

Bluth made numerous false and misleading statements regarding Petitioner's job performance in an evaluation prepared and tendered to Petitioner for his signature in April 2015. Petitioner responded to this evaluation on April 27, 2015, with a memo to Human Resources rebutting Bluth's statements and providing multiple exhibits demonstrating the falsity of Bluth's statements. Preparing a false or misleading report is a violation of Section 15A(b)(6) of the Securities Exchange Act of 1934 and FINRA Rule 2010, both of which mandate ethical conduct within broker/dealers, a violation of FINRA Rules 3110 and 3010, which mandate an adequate supervisory system, a violation of 15 U.S.C.S. § 78o(a)(1), La. R.S. 51:703(D)(2), and a retaliatory act taken in response to Petitioner engaging in protected activity.

30.

Petitioner met with FINRA personnel in New Orleans on May 6, 2015, and submitted a report with supporting documentation to FINRA on May 12, 2015.

31.

Petitioner then submitted an internal memo to the Human Resources Department on May 8, 2015, formally reporting incidents occurring over the previous six months and disclosing that

the Legal and Regulatory Compliance committee had been apprised of the rule violation omitted from the 2014 Annual Review. Petitioner informed Cindy Collins of his reports to the SEC and FINRA on May 12, 2015. Floyd Riedlinger, Human Resource Manager for the Bank, was informed of Petitioner's reporting activity on May 14, 2015.

32.

Defendants' counsel contacted undersigned counsel on May 13, 2015, in response to a letter of representation presented to Hancock Holding Company by Petitioner on May 8, 2015. After an electronic preservation letter was faxed to Defendants' attorneys on May 19, 2015, Petitioner was terminated on May 20, 2015 in violation of 15 U.S.C.S. § 78u-6(h)(1)(A).

33.

Petitioner contends that he engaged in activity protected under 15 U.S.C.S. § 78u-6(h) and La. R.S. 23:967.

34.

Following and on account of Petitioner's engagement in protected activity within the meaning and intent of 15 U.S.C.S. § 78u-6(h) and La. R.S. 23:967, Defendants have subjected Petitioner to illegal retaliation and reprisal, consisting of, but not limited to, ostracism, threats, harassment, and termination of his employment.

35.

Petitioner reserves his right to amend this complaint to fully set forth allegations discrimination and retaliation prohibited by Title VII of the Civil Rights Act of 1964 42 U.S.C.S. § 2000, et seq. upon receipt of a right to sue notice from the Equal Employment Opportunity commission.

36.

At all times pertinent hereto, Petitioner enjoyed a clearly established right to protest, report, and oppose securities violations occurring at HIS. Petitioner contends that Defendants violated his clearly established rights by subjecting him to a hostile work environment, harassing, threatening, and ostracizing him, and then terminating him immediately upon learning that he had made reports to the Securities Exchange Commission and the Financial Industry Regulatory Authority.

37.

As a result of the events described herein, Petitioner sustained damages which include, but are not limited to, loss of employment, lost pay and benefits, loss of standing in the community, loss of employment opportunities, reputational damage, humiliation and embarrassment, and all such other damages as will be more fully shown at trial and for which Petitioner sues for herein.

38.

Petitioner is entitled to and desires reinstatement, two times back pay, attorney's fees, and all costs of this litigation pursuant to 15 U.S.C.S. § 78u-6(h)(1)(A), injunctive relief pursuant to 15 U.S.C.S. 78u-6(h)(1)(C), and attorney's fees, injunctive and/or equitable relief under La. R.S. 23:967.

39.

Pursuant to 15 U.S.C.S. § 78u-6(h)(3), and La. R.S. 23:967, this Court is afforded the ability to issue an injunction and, further, to order reinstatement of Petitioner and any such affirmative or equitable relief as may be appropriate.

40.

Fed.R.Civ.P. Rule 65 further provides for the issuance of an injunction where there exists

immediate and irreparable injury, loss, or damage resulting to Petitioner.

41.

Attached hereto and made part hereof is the Affidavit of Petitioner attesting to the facts and immediate and irreparable injury, loss, and damage pursuant to Fed.R.Civ.P. Rule 65.

42.

Petitioner shows that immediate and irreparable injury, loss, and damage will result before the adverse party can be heard in opposition. Specifically, the intrusion and chilling effect on Mr. Eden's clear right to protest, oppose, and report regulatory violations to the SEC and FINRA not only represent direct irreparable harm to him, but also serve to chill the speech of others similarly situated to him. Due to the regulatory environment of the financial services industry, terminating Petitioner's employment triggers the submission of a Form U-5 to FINRA. This form must be submitted by June 19, 2015, and once submitted, it is posted publicly thereby directly impacting Petitioner's ability to obtain replacement employment, unquestionably and directly impacting his reputation and standing as a respected securities industry professional. Petitioner will not simply suffer loss of income; he will lose the ability to pursue his livelihood and this loss will be immediate and irreparable. Furthermore, absent injunctive relief, Defendants' illegal actions will serve to chill and restrict Petitioner's rights as a whistleblower, and others similarly situated, to report, complain of, and protest unlawful practices and activities by Defendants and will irreparably harm Petitioner's personal and professional reputation.

43.

Petitioner is entitled to and desires the issuance of a preliminary, and thereafter permanent injunction, directed to Defendants, ordering his reinstatement as Chief Compliance Officer at Hancock Investment Services and Horizon Advisers or, in the alternative, placing Mr.

Eden on paid administrative leave during the pendency of this litigation, and further enjoining Defendants, its agents, employees, or assigns from infringing on Petitioner's rights under Federal law, specifically 15 U.S.C.S. § 78u-6(h), and under state law, La. R.S. 23:967, from further harassing or retaliating against Petitioner on account of his previous reporting, complaining, and opposing illegal activity in the workplace, from interfering with the due course of these proceedings, and retaliating against employees affiliated with Petitioner.

44.

Attached hereto and made part hereof is the certification by counsel as to the efforts made by undersigned counsel to contact the adverse party, Defendants, Hancock Holding Company and its subsidiaries Whitney Bank and Hancock Investment Services.

45.

Attached hereto and made part hereof is Petitioner's Memorandum in Support of Complaint for Damages and Request for Preliminary Injunction.

46.

Petitioner is entitled to and desires trial by jury of this matter.

WHEREFORE, Plaintiff, William Eden, prays, after due proceedings are had, that this Court issue a preliminary, and thereafter permanent injunction, ordering the reinstatement of William Eden as Chief Compliance Officer at Hancock Investment Services and Horizon Advisers and placing Mr. Eden on paid administrative leave, due to the impending birth of his first child, during the pendency of this litigation, and further enjoining Defendants, its agents, employees, or assigns from infringing on Petitioner's rights under Federal law, specifically 15 U.S.C.S. § 78u-6(h), and under state law, La. R.S. 23:967, from further harassing or retaliating

against Petitioner on account of his previous reporting, complaining, and opposing illegal activity in the workplace, from interfering with the due course of these proceedings, and retaliating against employees affiliated with Petitioner. Petitioner prays for trial by jury and, after due proceedings are had, that there be Judgment herein in his favor and against defendants, jointly and *in solido* as allowed by law, for all sums as are reasonable under the premises, attorney's fees, all costs of these proceedings, legal interest thereon from the date of demand until paid, and all such other relief to which Petitioner is entitled at law or in equity.

Respectfully submitted,

/s/ Natasha L. George
JILL L. CRAFT, La. Bar Roll No. 20922
Attorney at Law, LLC
Crystal LaFleur, La. Bar Roll No. 27490
Natasha L. George, La. Bar Roll No. 34293
509 St. Louis Street
Baton Rouge, Louisiana, 70802
Ph: (225) 663-2612
Fax: (225) 663-2613